## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

HILDA FRANCO-LAUREANO,

     Plaintiff,

         v.                        CIVIL NO.: 12-1480 (MEL)

UNITED STATES OF AMERICA,

     Defendant.

## OPINION AND ORDER

On November 5, 2013, the United States of America ("defendant" or the "government") filed a motion for extension of time until December 6, 2013 to file a "renewed Motion for Summary Judgment," stating that counsel of record for plaintiff had not provided defendant with transcripts from any of the depositions they conducted in this case. ECF No. 37. On November 6, 2013, the court granted an extension of time to file motions for summary judgment, extending the deadline until December 2, 2013. ECF No. 38. The court stated:

> The response to the motion for summary judgment shall be due by December 19, 2013. Plaintiff shall produce the deposition transcripts no later than November 15, 2013. *No additional extensions to these deadlines will be granted.* Plaintiff is put on notice that failure to produce the transcripts by said date shall result in the imposition of sanctions, including but not limited to striking the testimony of a particular witness whose deposition transcript has not been produced in a timely manner. Due to this delay, the bench trial is reset for April 28, 2014 at 9:30 a.m. . . . Id. (emphasis added).

On November 21, 2013, the government filed an informative motion stating that plaintiff had not yet provided it with the deposition transcripts in question, inhibiting the government from complying with the December 2, 2012 summary judgment deadline. ECF No. 39. On November 26, 2013, the government filed another informative motion informing that plaintiff had still not

produced the transcripts in question. ECF No. 43. On December 2, 2013, plaintiff filed a motion evincing that the deposition transcripts had been received by the government on November 22, 2013. ECF No. 44.

Without requesting any additional extension of the dispositive motion deadline or leave to file, on December 10, 2013 the government filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiffs' Federal Tort Claims Act ("FTCA") claim is barred under the independent contractor doctrine and the discretionary function exemption. ECF No. 46. Nearly two months later, on January 28, 2014, plaintiff responded to the government's motion stating it was making a "preliminary reply" to the motion to dismiss. ECF No. 47, at 1. Plaintiff alleges that the government has not provided her with documents requested during the depositions held on September 18, 2013, September 24, 2013, and September 25, 2013. Id. She alleges that the documents requested during the deposition were related to the "functions of duties of the GSA and its employees" and, in essence, that she is not equipped to adequately respond to the government's motion to dismiss without them. Id. at 11-12 (emphasis removed). She asks the court to order the government "to provide all documents and information on the operation of the Federico Degetau complex, to enable present [*sic*] a more detailed reply to the [g]overnment's defense of 'discretionary function or duty'". Id. at 13.

In her response in opposition, plaintiff alleges that there is no contract of record between the Government Services Administration ("GSA") and Brooks Range Contract Services, Inc.("BRCS"). Id. at 4. She points out that the contents of any contract between them are unclear, because the first document the government submits (ECF No. 46-3) was not signed by BRCS. Id. at 3. Furthermore, plaintiff points to the deposition transcript of Jaime Quiñones, in which he

states: "My understanding is yes, there was my contract under the parking garage project and there would have been one for the maintenance of the facility." Id. at 4. Plaintiff states that she is "at a loss to know which of the two contracts (parking project or maintenance) would be the applicable one to the question as to which one would cover the accident reported by Plaintiff, which produced the damages reflected in her claim, and the Complaint in this case." Id. Plaintiff also points out that the one document that the government has submitted that is signed by a representative of BRCS, which is titled as an "award/contract," is unsigned by the government. ECF Nos. 43-1 at 2; 47. Moreover, what plaintiff fails to mention is that the document signed by John L. Duamel, COO of BRCS, is dated November 13, 2003, does not reference a period of service, and does not include the scope of the work to be performed. The government also submits an "award/contract" signed only by a Wanda Padilla, a contracting officer for the GSA. on June 10, 2014. That document, however, not only differs substantially from the one signed by Mr. Duamel, but specifically states that the period for performance is August 1, 2004 through July 31, 2005. ECF No. 43-1, at 1. According to the complaint, accident that is the subject matter of this case occurred on August 4, 2010, over five years after that period of performance had expired. ECF No. 1.

As stated by the First Circuit Court of Appeals in Carroll v. United States—the case upon which the government relies heavily in support of its arguments for dismissal—"[t]he agreement between the United States and [the contractor] is critical evidence in evaluating the government's relationship with the contractor and, . . . the nature of that relationship is an essential component of our analysis of the discretionary function exception." 661 F.3d 87, 94 (1st Cir. 2011). The same is true in this case, yet "the contract materials in the record are less than ideal." Id. With regard to the fact that the agreements in the record are not signed by a representative of both the

GSA and BRCS, the government replies, without elaboration, that "Mr. Padilla testified in detail as to why the electronically produced contract did not contain a signature . . . . " ECF No. 50. A careful review of Mr. Padilla's deposition testimony to which the government cites does not elucidate why the government is unable to produce some form of written proof that the GSA and BRCS entered an agreement. He does state "[w]e use an electronic system called COMPRISION, to do our contract awards." ECF No. 4, However, neither this, nor any other statement he made in the deposition transcription to which the government cites provides any clarification as to why proof of an electronic signature, or any signature if the contract in the government's system is a scanned document with an original non-electronic signature, memorializing their agreement cannot be produced. As it stands, there is no proof of a written agreement evincing that the GSA's sidewalk maintenance responsibilities were delegated to BRCS with respect to the location, date, and time in question.

It is not automatically fatal to the government's case that the record does not contain proof of an agreement signed by both sides detailing the scope of the contractor's duties. See O'Connor, 661 F.3d at 94 (affirming district court's determination that although the record did not contain a signed contract between the GSA and its contractor, the record was supplemented with additional materials that shed light on the terms of the agreement). In this case, however, the government has not sufficiently supplemented the record with additional evidence in the form of signed amendments to the original agreement, affidavits, deposition testimony, among other possible sources of proof,[1] in order to fill in the gaps that exist in the record regarding the

---

[1] Although in O'Connor the court noted that the contract materials in the record were "less than ideal," the record did contain "multiple forms labeled 'Amendment of Solicitation/Modification of Contract,' several of which indicate[d] that amendments were made to an agreement between the government and [the contractor]. One such form [bore] the signatures of both [the contractor's] president and [the] GSA's contract specialist." 661 F.3d at 95. Furthermore, "the government [had] represented in its filings to the court that the [document containing a detailed description of the contractor's role and responsibilities] reflect[ed] the parties agreement." Id. Based on the totality

existence and scope of the agreement between the GSA and BRCS on the date of the accident. Based on the information the government has brought to the court's attention thus far in support of its motion to dismiss, the scope of the GSA's and BCRS's duties with regard to the maintenance of the sidewalks at the Federal Degatau complex is uncertain. The documents the government has submitted do not evince that on the date of the alleged accident BCRS—as opposed to the GSA—was responsible for the maintenance of the pedestrian sidewalk upon which plaintiff allegedly fell and sustained injuries.

The government does submit some supplemental information in addition to the agreements and "award/contracts" that are not signed by both parties, but unlike in O'Connor, the additional materials do not suffice to bridge the gaps that exist. In support of the contention that "the contract at issue in this case is a 'firm fixed contract,'" the government points to the deposition testimony of Rubén Padilla Morales, a GSA Supervisory Contract Specialist, in which he states there was a "firm fixed contract . . . putting all the responsibility into the contractor's hands." ECF No. 46, at 6; 46-16, at 3. This testimony, however, does not reveal any details about the contract, such as which parties this contract was between, the time the contract was effective, or the particular task or responsibilities assigned to the contractor, which could enable the court to verify that Mr. Padilla was indeed referring to the contract "at issue". The government also cites to a portion of Mr. Padilla's deposition in which he states that if an employee for the GSA "observed that something was wrong" he would speak to the "Brooks Range project manager about it." ECF No. 46, at 6; 46-17, at 2-3. This portion is also not sufficiently specific to demonstrate that the GSA delegated the responsibility for maintenance of the sidewalk where plaintiff allegedly tripped on August 4, 2010, such that the GSA did not retain responsibility for

---

of the information in the record, the First Circuit was "satisfied that the documents adequately memorialize[d] the agreement between the United States and [the contractor]." Id.

the safety of visitors at that location, date, and time. The testimony of Edgar J. Hernández, the Director of the GSA's Caribbean Service Center, which the government also offers in support of the contentions that "GSA employees had no supervisory rights over BRCA under the contract at issue" and "GSA employees only retained the right to conduct sporadic inspections of the property" does not even refer to BRCS whatsoever, let alone the location, date, and time at issue in this case.

Next, in its motion to dismiss the government avers that "[a]ll of the rights and responsibilities of the government and the contractor are contained within the contract itself. Under the contract in this case, the contractor, BRCS, was responsible for the repair and maintenance of the pedestrian walkways within the federal compound." ECF No. 46, at 7. The government cites to another portion of Mr. Padilla's deposition, which indicates that BRCS is responsible for the structural maintenance of "certain slabs of decorative concrete that lead from the sidewalks in the property line to the U.S. Court house". ECF No. 46-18, at 2-7. Once again, this testimony does not adequately support the government's broad assertion in its motion. His testimony does not state that BRCS was responsible for all pedestrian walkways surrounding the Federico Degetau federal building, nor does the complaint verify or the government provide any additional evidence that the plaintiff's alleged fall occurred on the side about which Mr. Padilla was referring. His testimony is also silent as to BRCS's responsibility on the date and time at issue. He states "the contract reads that the contractor is responsible for maintain the building, the grounds, anything structurally sound in accordance to the way it should be." ECF No. 46-18, at 6. However, it does not specifically identify a contract to which he refers, or which building, grounds, and structure to which he refers, such that the court can verify that he was discussing the terms of the unsigned contract the government has submitted and the location where plaintiff

allegedly fell. Overall, the analytical gaps in the evidence the government has provided are too large for the court to arrive at a logical conclusion that BRCS was responsible for the maintenance of the sidewalk where plaintiff allegedly fell on August 10, 2010. Because the government's motion to dismiss hinges on the nature and scope of such an agreement, the government has not placed the court in a position to grant its motion to dismiss.

In light of the previous warning that no further extensions to the deadlines in this case would be granted, and the failure by both sides to adhere to the deadlines set in this case, on or before April 4, 2014 at noon, both sides shall inform the court why sanctions should not be imposed. Additionally, due to the arguments raised by the parties, by that same date the parties shall comply with the following:

1.     Plaintiff shall show cause as to why her request for an order should not be dismissed on timeliness grounds, given that the documents were allegedly requested in September 2013, over four months before plaintiff brought this matter to the court's attention, in a response in opposition that was filed nearly two months after the government's motion to dismiss.

2.     Plaintiff shall clarify why she did not request these documents until the depositions taken in September 2013, and why their relevance was not reasonably foreseeable prior to the expiration of the deadline for service of written discovery requests, on January 11, 2013. See ECF No. 18, at 1.

3.     The government shall show cause as to why its motion to dismiss should not be summarily denied on untimeliness grounds and for failure to adequately evince the contractual agreement between the GSA and BRCS, upon which its motion to dismiss relies.

4.       The government shall clarify why the documents requested at the depositions in September 2013 have not been produced and why sanctions should not be imposed for failure to produce them.

5.       The government shall certify under penalty of perjury that there are no additional documents that are not currently in the record pertaining to the maintenance of sidewalks in the Federico Degetau federal complex or the contractual relationship between the GSA and BRCS effective on the date of the alleged accident. If any such documents do exist, the government shall attach said documents to its response to this order.

6.       Since there is no written contract signed by the GSA and BCRS in the record, the parties shall clarify whether the GSA is required to have signed, written agreements with its contractors. If any regulatory provision, statutory provision, or administrative policy provision exists regarding the permissibility of oral and / or unsigned agreements between the GSA and its contractors or requiring such agreements to be signed and executed, the parties shall provide a citation to the specific provision.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 2nd day of April, 2014.

s/Marcos E. López
U.S. Magistrate Judge